J-S10014-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.D.C., JR., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.D.C., MOTHER | No. 1860 EDA 2014 |

Appeal from the Order Dated May 27, 2014
in the Court of Common Pleas of Philadelphia County
Family Court at Nos.: CP-51-AP-0000613-2013
CP-51-DP-0000565-2012

BEFORE: GANTMAN, P.J., STABILE, J., and PLATT, J.*

MEMORANDUM BY PLATT, J.:                    **FILED MARCH 10, 2015**

A.D.C. (Mother)[1], appeals from the order of the Court of Common Pleas of Philadelphia County, entered on May 27, 2014, that terminated her parental rights to her daughter, A.D.C., Jr. (Child), born in March of 2005.

---

* Retired Senior Judge assigned to the Superior Court.

[1] We note that Mother is also referred to as A.C.; the trial court is inconsistent when referring to Mother. Therefore, for clarity purposes we refer to Mother as A.D.C. We have amended the caption accordingly.

Counsel has filed a motion to withdraw. We affirm the order and grant counsel leave to withdraw.[2]

On December 8, 2010, Philadelphia's Department of Human Services (DHS) received a substantiated Child Protective Services (CPS) report alleging that Child, and one of her siblings, had been sexually abused by a maternal uncle who resided with the children and Mother. The report also alleged that Mother suffered from paranoid schizophrenia.

DHS' investigation revealed that the family had a history of physical and sexual abuse. DHS discovered that it was aware of Mother since April of 1998, when it received and substantiated a General Protective Services report concerning Mother's unstable mental health and history of multiple psychiatric hospitalizations.

Child was hospitalized at the Horsham Clinic in April of 2011 after she stated she was hearing voices that were telling her to cut and kill herself. Horsham Clinic discharged Child to a partial hospitalization treatment program and returned her to Mother on July 25, 2011. In-Home Protective Services (IHPS) were implemented in the home through Presbyterian Children's Village on July 27, 2011.

_____

[2] The trial court also terminated the parental rights of Child's father, W.M., and an unknown father. Neither appealed their terminations and neither is a party to this appeal.

Child was suspended from school for misbehavior on March 23, 2012, and sent to the home of her maternal aunt when school staff were unable to reach Mother.  Child disclosed that when she misbehaved in school Mother hit her with sticks, a pole from a fan, and belts.  According to Child, Mother also forced her to sleep in the hallway.

Child told DHS staff, on March 24, 2012, that Mother had physically assaulted her and that she was afraid to return to Mother's residence. Mother agreed to allow Child to remain in her maternal aunt's care until March 26, 2012.  On March 26, 2012, a multi-disciplinary team met with Child at her maternal aunt's home.  Child stated that she was afraid to return to Mother's home because Mother hit her with different objects.

In a visit to Child's school on March 27, 2012, DHS learned that Child had severe behavioral issues.  Child assaulted other children, threw tantrums, and told sexually explicit stories to other students.  School staff told Mother about these problems but Mother refused to authorize school-based mental health services for Child.  DHS obtained an Order of Protective Custody (OPC) for Child on March 30, 2012, and placed her in foster care through First Home Care.

Mother was present when the trial court held a shelter care hearing on April 2, 2012, at which it lifted the OPC and temporarily committed Child to DHS.  Father's whereabouts were unknown. The trial court adjudicated Child dependent and committed her to DHS at an adjudicatory hearing held on

April 10, 2012. The trial court ordered Mother to attend Fairmount Behavioral Health System (BHS) for monitoring of her mental health services. DHS placed Child in a therapeutic foster care home through Elwyn, Inc., in August of 2012.

On August 31, 2012, Mother was arrested and charged with aggravated assault, endangering the welfare of a child, possession of an instrument of crime, false imprisonment, unlawful restraint, simple assault, and recklessly endangering another person, with Child alleged as the victim.[3] The criminal court issued a criminal protective/stay away order that prohibited Mother from all contact with Child prior to trial.

DHS held a Family Service Plan (FSP) meeting on April 9, 2013. The FSP objectives DHS established for Mother were: 1) complete a psychiatric evaluation and follow through with all recommendations, including prescribed medication; 2) sign authorizations to permit DHS to obtain copies of evaluations and progress reports; 3) attend parenting classes; 4) locate and occupy suitable housing; and, 5) meet regularly with Elwyn social workers and follow through with Individual Service Plan objectives.

Mother failed to attend Child's July 11, 2012, permanency review hearing where the trial court found Mother non-compliant with her permanency plan. The trial court referred Mother to BHS for a parenting

_____

[3] **See** 18 Pa.C.S.A. §§ 2702, 4304, 907, 2903, 2902, 2701, and 2705, respectively.

capacity evaluation. Child remained institutionalized at BHS. (*See* Permanency Review Order (PRO), 7/11/12).

Upon her discharge from BHS, Child was placed in treatment level foster care receiving therapeutic support services; mobile therapy; trauma focused therapy and medication management. (*See* PROs, 10/10/12; 4/09/13; 6/25/13; 11/07/13).

Child suffers extensive behavioral and mental health issues. She has diagnoses of attention deficit hyperactivity disorder, post-traumatic stress disorder, and bi-polar disorder. (*See* N.T. Hearing, 5/27/14, at 11).

Mother was again absent at Child's October 10, 2012, permanency hearing, where she was found non-compliant with the permanency plan and re-referred to BHS for a parenting capacity evaluation. The trial court permitted weekly, supervised visitation with Child at DHS. (*See* PRO, 10/10/12, at 2).

Mother, who was incarcerated at the time, remained non-compliant with the permanency plan as of the January 9, 2013, permanency review hearing. (*See* PRO, 1/09/13, at 1). Child testified at Mother's preliminary hearing on November 19, 2012, detailing the physical abuse she suffered at Mother's hands. (*See* N.T. Hearing, 5/27/14, at 14). The matter was held over for trial.

Mother remained incarcerated as of the April 9, 2013, permanency review hearing at which the trial court noted the criminal court's outstanding no contact order. (*See* PRO, 4/09/13, at 2).

Mother remained non-compliant at the permanency review hearing on June 25, 2013, where the trial court acknowledged DHS' outreach to Mother in prison and Mother's failure to respond. The trial court listed the matter for a goal change/involuntarily termination of parental rights hearing. (*See* PRO, 6/25/13, at 2). DHS filed Goal Change/Involuntary Termination of Parental Rights petitions against Mother, Child's father, W.M., and unknown father on October 21, 2013.

The case was continued at the next three scheduled listings. Child was an inpatient at BHS pursuant to a 302 commitment[4], as of February 27, 2014, where she remained at the time of the May 27, 2014, goal change/involuntary termination of parental rights hearing. (*See* PRO, 5/27/14, at 1).

At the May 27, 2014, hearing, DHS presented the testimony of DHS social worker Amos Suah and entered exhibits into evidence. Mother was brought to the hearing from prison.[5]

---

[4] *See* 50 Pa.C.S.A. § 7302.

[5] Mother made a brief statement on her own behalf at the close of the hearing. She was neither questioned nor cross-examined.

Mr. Suah testified that DHS had made referrals for services to address Child's mental health needs for the past four to five years. (**See** N.T. Hearing, 5/27/14, at 12). The trial court had repeatedly referred Mother to BHS for mental health services and had repeatedly found Mother non-compliant with the permanency plan.

Child expressed to Mr. Suah on more than one occasion that she wants no contact or visits with Mother. (**See id.** at 14-15). Mr. Suah testified that Child shares no bond whatsoever with Mother. (**See id.** at 16). According to Mr. Suah, termination of Mother's parental rights will not result in any harm to Child, whose best interest mandates a goal of adoption. (**See id.** at 16-17).

The trial court entered its order terminating Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8) and (b), and changing Child's goal to adoption on May 27, 2014. Mother timely appealed.[6] On October 3, 2014, Mother's counsel filed a motion to withdraw as counsel and a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967) stating his belief that "this appeal in its present procedural posture is wholly frivolous and without support in the law or the facts." (Motion to Withdraw as Counsel, 10/03/14, at unnumbered page 1 ¶ 4). Counsel has submitted to

---

[6] Mother filed a Rule 1925(b) statement on June 23, 2014 simultaneously with her notice of appeal. The court entered its Rule 1925(a) opinion on July 31, 2014. **See** Pa.R.A.P. 1925.

this Court a copy of his letter to Mother, enclosing a copy of the **Anders** brief, informing her of the motion to withdraw, and advising her of her right to retain new counsel or proceed with the appeal *pro se*. (**See id.** at unnumbered page 5). On October 27, 2014, this Court, having found that counsel erroneously advised Mother that, if this Court granted him leave to withdraw, that she would have the right to proceed *pro se* or retain new counsel, permitted Mother to respond within thirty days. (**See** *Per Curiam* Order, 10/27/14 ("Appellant's right to raise any additional points she deems worthy of this Court's attention, *pro se* or with private counsel, is not contingent upon the granting of [counsel's] request to withdraw.")). Mother timely responded *pro se*. (**See** Mother's Response, 11/06/14, at unnumbered pages 1-5).

It is well-settled that "[w]hen faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw." **Commonwealth v. Rojas**, 874 A.2d 638, 639 (Pa. Super. 2005) (quoting **Commonwealth v. Smith**, 700 A.2d 1301, 1303 (Pa. Super. 1997)).

In **In re V.E.**, 611 A.2d 1267 (Pa. Super. 1992), this Court extended the **Anders** principles to appeals involving the termination of parental rights. We stated that counsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating parental rights may, after a conscientious and thorough review of the record, petition this Court for leave

to withdraw from representation and must submit an **Anders** brief. **See id**. at 1275. To withdraw pursuant to **Anders**, counsel must: 1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; 2) file a brief referring to anything in the record that might arguably support the appeal; and 3) furnish a copy of the brief to the appellant and advise her of her right to obtain new counsel or file a *pro se* brief to raise any additional points that the appellant deems worthy of review. **See id.** at 1273. Thereafter, this Court examines the record and determines whether the appeal is wholly frivolous. **See id.**

An **Anders** brief must:

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009).

The Supreme Court reaffirmed the principle that "indigents generally have a right to counsel on a first appeal, [but] . . . this right does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing such an appeal." **Id.** at 357 (citation omitted). Our Supreme Court stated:

> . . . In the Court's view, this distinction gave meaning to the Court's long-standing emphasis on an indigent appellant's right to "advocacy."  As the Court put it, "[a]lthough an indigent whose appeal is frivolous has no right to have an advocate make his case to the appellate court, such an indigent does, in all cases, have the right to have an attorney, zealous for the indigent's interests, evaluate his case and attempt to discern nonfrivolous arguments."

*Id.* at 357-58 (citations omitted).

Here, we conclude that counsel has substantially complied with the *Anders* and *Santiago* requirements.  He has submitted a brief that summarizes the case, referred to anything that might arguably support the appeal, and explains why he believes the appeal is frivolous.  (*See Anders* Brief, at 7-23).  Counsel has filed a motion to withdraw, sent Mother a letter advising her that he concluded that there are no non-frivolous issues, provided her with a copy of the *Anders* brief, and notified her of her right to retain new counsel or proceed *pro se*.  (*See* Motion to Withdraw as Counsel, 10/03/14, at unnumbered pages 1, 5).  Because counsel has substantially complied with the dictates of *Anders* and *Santiago*, we will undertake our own review of the appeal to determine it if it wholly frivolous.  *See In re V.E.*, *supra* at 1276.

The *Anders* Brief raises the following issues for our review:

**The Global Question**

Whether there is anything in the record that might arguably support the appeal that obviates a conclusion that the appeal is frivolous[?]

**Specific Areas of Inquiry**

[1]    Whether under the Juvenile Act, 42 Pa.C.S.A. Section 6351, and 55 Pa. Code Section 3130.74, in accordance with the provisions of the federal Adoption and Safe Families Act, 42 U.S.C. Section 671, *et seq.*, reasonable efforts were made to reunite the Mother with her Child and whether the goal change to adoption was the disposition best suited to the safety, protection and [physical], mental and moral welfare of Child[?]

[2]    Whether it was proven by clear and convincing evidence that Mother's parental rights should be terminated under Sections 2511 (a)(2) and 2511 (b)[?]

(***Anders*** Brief, at 6).

Our standard of review is as follows:

. . . In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions.  However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence.  The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence.  Though we are not bound by the trial court's inferences and deductions, we may reject its

- 11 -

> conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

In order to affirm the termination of parental rights, this Court need only agree with any one subsection of section 2511(a), in addition to subsection (b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

> \*     \*     \*

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

It is well-settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard that requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004) (citation omitted). Further,

> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In the Interest of K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted).

To terminate parental rights pursuant to section 2511(a)(1), the person or agency seeking termination must demonstrate through clear and convincing evidence that, for a period of at least six months prior to the filing of the petition, the parent's conduct demonstrated a settled purpose to relinquish parental rights or that the parent has refused or failed to perform parental duties. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).

With respect to section 2511(a)(1), our Supreme Court has held:

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M., II*, 708 A.2d 88, 92 (Pa. 1998) (citation omitted). Further,

. . . the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (citations omitted).

The Adoption Act[7] provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). It does not make specific reference to an evaluation of the bond between parent and childm, but our case law requires the evaluation of any such bond. *See In re E.M.*, 620 A.2d 481, 483 (Pa. 1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation

_____

[7] 23 Pa.C.S.A. §§ 2101-2938.

performed by an expert. *See In re K.K.R.-S*., 958 A.2d 529, 533 (Pa. Super. 2008).

We now turn to the first question presented in counsel's *Anders* brief, whether anything in the record might obviate the conclusion that the appeal is frivolous.

Here, the record reflects that Mother abused Child physically and mentally to the point that Child acted out by threatening and attacking other children in school. (*See* Dependency Petition, 4/03/12, at unnumbered pages 7-8). At the time of the hearing, Child's condition had deteriorated to the point that she was hospitalized to prevent her from harming herself. (*See* N.T. Hearing, 5/27/14, at 11).

DHS began to offer services to Mother when it initiated IHPS in July of 2011. (*See* Dependency Petition, 4/03/12, at unnumbered page 7). DHS established FSP objectives for Mother in April of 2013. (*See* FSP, 5/30/13). A review of the trial court's PROs reveals that Mother made no attempt to comply with the FSP. (*See* PROs, 7/11/12; 10/10/12; 1/09/13; 4/09/13; 6/25/13). There is nothing in the record that would prevent us from concluding that the appeal is frivolous.

The second question presented is whether DHS made reasonable efforts to reunite Mother with Child and whether the goal change to adoption was the disposition best suited to the safety, protection and physical, mental and moral welfare of Child. (*See Anders* Brief, at 6).

We need not address the first part of this question because our Supreme Court recently held that it is not necessary to demonstrate that an agency had made reasonable efforts to reunite a parent with their child before a parent's rights may be terminated. *See In re D.C.D.*, 105 A.3d 662, 672-73 (Pa. 2014).

Here, the record reflects that Mr. Suah testified about Child's best interest. According to Mr. Suah, Child shares no bond whatsoever with Mother, and the termination of Mother's parental rights will not result in any harm to Child. (*See* N.T. Hearing, 5/27/14, at 16). He stated that Child's best interests mandate a goal of adoption. (*See id.* at 16-17). Child expressed to Mr. Suah on more than one occasion that she wants no contact or visits with Mother. (*See id.* at 14-15). The trial court credited Mr. Suah's testimony. (*See* Trial Court Opinion, 7/31/14, at unnumbered page 5). Accordingly, termination of Mother's parental rights will serve Child's best interests. *See* 23 Pa.C.S.A. § 2511(b).

Our review of the record reveals that the trial court's decision to terminate Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1) and (b), and to permit Child's adoption without notice to or consent from Mother, is supported by clear and convincing evidence, and that there was no abuse of the trial court's discretion. *See In re L.M.*, *supra* at 511. Furthermore, this Court has conducted an independent review of the record as required by *In re V.E.* and finds that no non-frivolous issues exist.

Order affirmed.  Motion to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/10/2015